By the Court.—Freedman, J.
The complaint is unique. In it the pleader attempted to set forth a cause of action against twelve defendants nine of which constitute three distinct firms. The remaining three defendants are sued as the agents and representatives of the three firms, and one of them is styled in the body of the complaint as well as in the title of the action as “John Doe whose real name is unknown to plaintiff, the companion of J. Y. Alexander.” I have tried to find a term known to jurisprudence expressive of the cause of action attempted to be set forth by the complaint, but did not succeed.
The complaint alleges in vigorous popular language, and without regard to legal phraseology, trick and device, intimidation, false representations, illegal threats, mysterious conduct, duress, extortion, and possibly some other matters by means of which the plaintiff, a married woman, was compelled by the three representatives of the said three firms to execute a chattel mortgage upon certain personal property owned by her. The complaint then goes on as follows :
“ IY.—That at said time this plaintiff was in delicate health and in state of pregnancy. The threats and taunts of the said defendants John H. Mohlman and J. Y. Alexander, and the mysterious conduct of the defendant John Doe, had an effect upon the mind and body of this plaintiff so that she became excited and hysterical, and in that condition the plaintiff was unable and incapable of realizing the precise nature of her acts and doings ; she was- completely under *52 the influence of the fear excited by the aforesaid threats, and in that condition informed the defendants that she was willing to execute any mortgage they may require, and while in that condition the plaintiff signed a mortgage produced by the defendant Alexander.
“ Y.—That on the 17th day of March, 1887, there was filed in the office of the register of the city and county of New York a paper purporting to be a copy of the mortgage so signed by this plaintiff ; that the said paper was filed for the use, and with the authority of the defendants, the members of the said three firms hereinabove stated, and a copy of said paper is hereto annexed, marked ‘ Exhibit A.’ But this plaintiff, on her information and belief, avers that the said paper, Exhibit A,’ is not the paper so signed by this plaintiff, but that the paper, which plaintiff has signed, was, after such signing, altered in material particulars without the consent or authority of this plaintiff.
“ YI.—The plaintiff further shows and alleges : That while the plaintiff was in the condition of body and mind hereinabove described the said defendants who were present in plaintiff’s rooms demanded the sum of $2.50 as the expenses for drawing the said mortgage, and this plaintiff paid the same, acting under the same fear and apprehension. That this plaintiff signed the said mortgage and paid the said sum of money while her mind was incapable of exercising any volition, and while under the duress and compulsion produced by the defendants’ aforesaid acts and conduct.
“ YII.—That this plaintiff signed the said mortgage without any consideration whatever.
“ YIII.—The plaintiff further shows and alleges, that at the time of exacting said mortgage the defendant Alexander stated that said mortgage was only required by "defendant Mohlman as a private *53 security ; that the same would not be filed in the Register’s office. That the defendants violated said promise, and filed, on the 17th day of March, 1887, what they claim to be a copy of said mortgage, to the loss and injury of plaintiff.
“ IX.—The plaintiff further shows and alleges : That in consequence of the aforesaid conduct of the said defendants, and the excitement and painful agitation caused thereby, this plaintiff became sick and suffered a miscarriage, which miscarriage caused the plaintiff great pain and injury, and she is still suffering from the same, to her great damage in the sum of five thousand dollars.
“ Wherefore plaintiff demands judgment that the plaintiff may recover of the defendants in this action the sum of five thousand dollars, her damages sustained by reason of the premises alleged herein, together with the costs of this action.”
Thus it will be seen that the only damages alleged are damages arising from personal suffering.
The answers of the defendants put in issue every material allegation of the complaint.
At the trial, after plaintiff’s husband, as a witness Called by the plaintiff, had been examined and cross-examined, the court called upon plaintiff’s counsel to state what the cause of action was. The counsel stated : “ The cause of action is the personal injury sustained by Mrs. Wulstein through the invasion by these three men and the firms they represented, of her home, the threats made to her, and the consequent injuries that she suffered.”
The court intimated that such an action did not lie.
The counsel claimed that all the elements of the case had not yet been fully elicited, and the following thereupon took place :
The Court: What do you propose to prove—anything in addition to this gentleman’s evidence ?
*54 Mr. Wehle: No, merely the seriousness of the Suffering of the plaintiff.
The Court: The physical consequence ?
Mr. Wehle: The physical consequence, and that it was solely caused by the conduct of these defendants. And then I would ask to have the case submitted to the jury upon all the issues against each of the defendants, because there might be a difference in the degree of responsibility.
The court declined to receive such additional evidence and to submit any question to the jury, and, on motion of counsel for the defendants, dismissed the complaint. From the judgment entered upon such dismissal the plaintiff appealed.
The question presented by the appeal is one .of proof at the trial, and not, as has been claimed, a question of the sufficiency of the complaint. It is whether the testimony as given by plaintiff’s husband together with the additional facts proposed to be shown under the statements of plaintiff’s counsel, entitled the plaintiff to recover anything for her alleged personal sufferings. That no other damages were claimed except such as arose from personal suffering is too clear for argument. The point now raised that the plaintiff was entitled to recover at least $2.50 paid by her for the preparation of the chattel mortgage, is untenable (1) because it was not raised below ; (2) because such payment was not pleaded as an item of damage ; and (3.) because the testimony of plaintiff’s husband was that he, and not the plaintiff had paid the said sum.
The facts to be considered are as follows :
Plaintiff’s husband had a grocery store in Division street which, in January, 1887, he exchanged for a farm. On February 14, 1887, plaintiff purchased a grocery store and contents at No. 728 Second avenue, for which she took a bill of sale in her own name. She permitted her husband to run the said *55 store as if it were his own, and he did so run it. He then and there carried on business in his own name and bought goods on the strength of his apparent ownership. In March, 1887, he was indebted to the firm of J. H. Mohlman & Co, for goods received from them at the Division street store, and to the firms of B. Fisher & Co. and John F. Huner & Co. for goods received from them at the Second avenue store, and it having been ascertained by these firms that the title to the Second avenue store and its contents and appurtenances was in his wife, the plaintiff, they called upon him for payment or security. He represented himself as unable to pay, and then the representatives of said firms insisted that as security his wife should execute a chattel mortgage. So far they had a perfect and undoubted right to go, and the manner in which the said firms procured the information upon which they acted, is utterly immaterial.
It having now been ascertained that the representatives of the three firms had a right to call on plaintiff’s premises and a right to demand from her husband payment or security, the next question to be determined is, whether they subsequently committed any wrong.
Upon this point the facts may be summed up as follows :
Upon plaintiff’s husband refusing to pay or to procure the security demanded, he was threatened with arrest in legal proceedings. The plaintiff, who up to this time had been in the kitchen, then came upon the scene and demanded to know what was wanted. Matters were somewhat explained to her, and in the course of the conversation with her, the representatives of the firms repeated their threats to have her husband arrested and also threatened to attach the store and to close it right up. Plaintiff then said to her husband that he should do all the men wanted *56 to get them, out, but he was not willing. In the end the plaintiff, against the express protest of her husband, did execute and deliver the chattel mortgage in question which in the meantime had been prepared. There was no "physical violence inflicted or attempted or threatened to be inflicted upon the plaintiff, and her husband, in answer to an inquiry by the court, expressly conceded that she was not in any way prevented from leaving the room if she had seen fit to leave.
The most, therefore, that can be claimed is, that the threats which induced the plaintiff to execute and deliver the chattel mortgage, constituted duress which invalidated the mortgage. Her remedy thereafter was either an action in equity to restrain the mortgagees from collecting or enforcing the mortgage, or, after payment, under protest, an action at law to recover back the amount paid with interest. She pursued neither, and in fact her husband subsequently paid the mortgage. This disposes also of the alleged violation of promise not to file the mortgage as a further ground of liability on the part of the defendants.
The case having now been pruned down to its proper size, the only question left is whether, on obtaining property by means of duress, the wrongdoer is liable for subsequent consequential mental distress of the party wronged and for physical suffering caused by the mental distress. The miscarriage in this case occurred about two weeks after the execution and delivery of the chattel mortgage. I can find neither authority nor principle for such a claim.
The fundamental principle applicable to all cases in which primitive damages cannot be recovered, and the case at bar belongs to this class, is that the damages to be recovered must be the natural and proximate consequence of the act complained of, *57 whether they are general, viz., such as necessarily result from the wrong alleged, or special, viz, such as are never implied, but recoverable if specially pleaded. 1 Greenleaf on Evidence, § 256. Whether they are general or special, the maxim is : carosa próxima, non remota, spectatur ; or, in the language of Lord Bacon, “ It were infinite for the law to judge the- causes of causes, and their impulsion one on another ; therefore, it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further, degree.”
The principle that the law never suffers a wrong and a damage without a remedy, is subject to the qualification that the damage must be the natural and proximate consequence of the wrong complained of, and not a remote consequence.
The general rule being as stated, the damages sought to be recovered in this case are too remote, and the complaint was properly dismissed.
The judgment should be affirmed with costs.
O’GrOBMAN, J., concurred.